UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HENRY BUTLER,<br><br>                         Plaintiff,<br>v.<br><br>AMERICAN FOODS GROUP LLC and<br>GREEN BAY DRESSED BEEF LLC,<br><br>                        Defendants. | Case No. 11-CV-1013-JPS<br><br><br>ORDER |

1.      BACKGROUND

Plaintiff Henry Butler ("Butler"), proceeding *pro se*, claims that Defendants American Foods Group LLC ("AFG") and Green Bay Dressed Beef LLC ("GBDB"): (i) first denied him employment on the basis of his race; and (ii) later terminated his employment: (a) in retaliation for complaints he lodged with his employer; and (b) because of a disability. (Docket #27 and #49).[1] Butler brings his racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") (Docket #72, 5-6) and his disability discrimination claim under the Americans With Disabilities Act ("ADA"). AFG and GBDB each move for summary judgment on all of Butler's claims. (Docket #55 and #68).

For the reasons set forth below, the Court will grant Defendants' motions for summary judgment on all claims.

---

[1] In his initial complaint, Butler theorized that his eventual termination may have been due, in part, to "sexual advances he reported." (Docket #1, 5). However, Butler's amended pleading omits any reference whatsoever to this theory. (Docket #27). Therefore, the Court finds that Butler abandoned that theory and, accordingly, does not address it in this order.

2. FACTS

Except as noted *infra*, the following facts are undisputed among the parties.[2]

2.1 The Defendants

GBDB is a subsidiary of AFG. (GBDB's Proposed Facts (hereinafter "GBDB-Facts") ¶ 1). The Defendants are in the business of beef processing. (Docket #69, 2).

2.2 Butler's Unsuccessful Applications for Employment

Butler submitted five employment applications to AFG between September 6, 2007, and February 1, 2008, and each was denied. (AFG's Proposed Facts (hereinafter "AFG-Facts") ¶ 13). The last of those denials was memorialized in a letter from AFG to Butler dated February 1, 2008. (AFG-Facts ¶ 12); (Docket #56-7).

The charge Butler filed with the EEOC in this connection is dated April 28, 2009. (Docket #56-46).

2.3 Butler is Hired and Later Terminated

After applying for employment with GBDB at a job fair in March of 2008, GBDB hired Butler for a fabrication position on March 17, 2008. (GBDB-

---

[2] The Defendants' respective motions for summary judgment comply with Civ. L. R. 56 (a) (providing *pro se* litigants warning in plain English that facts proposed by the moving party which are supported by admissible evidence in the record will be accepted by the Court as being true unless the *pro se* litigant submits or cites contradicting admissible evidence). (Docket #55 and #68).

Facts ¶¶ 14-15).[3] On March 24, 2008, Butler signed a form acknowledging receipt of GBDB's attendance policy (the "Attendance Policy"). (GBDB-Facts ¶ 22 ).

The Attendance Policy provides, in relevant part:

> Regular attendance and punctuality are very important to production. Our production is carefully planned so that we may deliver our product to our customers on time as promised. If you are absent or tardy, the work is seriously affected; and the additional burden will fall on your fellow workers.…These guidelines do not constitute a contract, expressed or implied, and are not intended as limitations upon the Company's judgment to expend, alter or otherwise modify them as determined by the facts of each individual situation.
>
> . . .
>
> Absences from work that are not approved and documented in advance by the supervisor are called "points." Excessive points are subject to progressive discipline, up to and including discharge.
>
> A point is considered to be missing all or part of a scheduled workday. If you are absent for more than one hour of your scheduled workday, it counts as one (1) point. If an employee reports to work late (less than one hour), it counts as one-half (.5) point. If any employee leaves work before the end of his/her shift end for any reason, one-half (.5) point will be charged. When a team member fails to call in thirty (30) minutes prior to his/her starting time, he/she will be assessed

---

[3] AFG argues that it is not a proper defendant in a Title VII or ADA case brought by Butler because it lacks a legally cognizable connection to Butler. As the Court noted in its order dated July 19, 2012, various documents submitted by Butler raise questions as to whether certain corporate formalities were being followed strictly. (Docket #35). The Court need not address this issue because, even if AFG is a proper defendant, Butler's claims fail on the merits.

one (1) additional point. If an employee has an illness lasting more than one workday and a Doctor's excuse is provided, the employee will only be charged one point for consecutive days of illness; regardless of duration. However, if an employee is absent for more than one consecutive day and does not provide a Doctor's excuse, a point will be assessed for each day absent. Failing to report for work and failing to call in (No Call/No Show) for three (3) consecutive days will result in immediate termination of employment.

American Foods Group (Green Bay Dressed Beef) attendance policy will operate on a ten (10) point basis as follows:

| | | |
|---|---|---|
| • | Accumulation of six (6) points | Documented verbal warning. |
| • | Accumulation of eight (8) points | Discussion with the supervisor, issuing of a written warning and be offered to counsel with the Human Resource Department |
| • | Accumulation of nine (9) points | Written warning in lieu of suspension. |
| • | Accumulation of ten (10) points | Termination. |

. . .

Importantly, remembering this attendance policy is designed to ensure good attendance while allowing for unexpected events that sometimes occur. This policy is not intended to allow continual absences. An employee who, by his/her attendance, repeatedly puts himself/herself close to the line of discharge, will be counseled. He/She will be strongly advised to improve attendance, or be subject to termination.

(Docket #70-12).

Butler was accessed thirteen points under the Attendance Policy as follows: April 29, 2008–1 point;[4] May 5, 2008–1 point;[5] May 6, 2008–1 point; August 4, 2008–1 point; August 5, 2008–1 point;[6] November 26, 2008–0.5 point; December 29, 2008–2 points; December 31, 2008–0.5 point; January 2, 2009–1 point; February 14, 2009–1 point; February 16, 2009–1 point;

---

[4] Butler protests the assessment of this point because he thought that a three-day suspension began that day. However, the Defendants explain that the point was assessed because Butler called in sick that day and point to contemporaneous documentation of such. (Docket #70-35). Butler points to no evidence to dispute GBDB's explanation. The Attendance Policy provides for assessment of one point for calling in sick without a doctor's note, so the Court is obliged to and will consider this point fairly assessed.

[5] Butler also argues that the points for absences on May 5, 2008, and May 6, 2008, were wrongfully assessed because, Butler says, he missed work on May 5th due to a tooth problem, he saw a dentist on May 6th and then he submitted a dentist's note. Unfortunately for Butler, the dentist's note he submitted explains only his whereabouts on May 6th. (Docket #70-33). The Defendants cite the Attendance Policy to justify one point for each of those days. It provides, in relevant part, that "[i]f any employee has an illness lasting more than one workday and a Doctor's excuse is provided, the employee will only be charged one point for consecutive days of illness; regardless of duration." (Docket #70-12). As a matter of logic, the Defendants prevail; it is admittedly a fine distinction, but if Butler's doctor's note explains his whereabouts only on May 6th, then, on the terms of the Attendance Policy, he receives a point for May 6th. May 5th was unexplained by the doctor's note and so Butler could have been anywhere. The Court is obliged to find that assessment of these points is consistent with the Attendance Policy.

[6] Butler argues that this point was not fairly assessed because the time clock malfunctioned. The Defendants point out that Butler's shift started at 6:00 a.m. and his time card was not punched until 8:00 a.m. Alas, a redundancy foils Butler's "time-clock malfunction" alibi – Butler's electronic card-swipe into the building registered at 8:00 a.m. that morning and the electronic records shows no entry by him before 8:00 a.m. (Docket #70-38). The Attendance Policy provides for a one-point assessment for being absent more than one hour of your scheduled workday. (Docket #70-12). The unopposed evidence shows that Butler was absent for two hours of his scheduled workday and so the point stands as valid.

February 17, 2009–1 point; and February 18, 2009–1 point (collectively, the "Thirteen Points"). (GBDB-Facts ¶¶ 54, 58, 60, 63, 67, 69, 72, 74, 76, 78, 79).

The points for August 4, 2008, November 26, 2008, December 29, 2008 (one of two), January 2, 2009, and February 16, 17 and 18 of 2009 – together totaling 6.5 points – are uncontested by Butler. As footnotes 4, 5 and 6 of this order explain, four of the 6.5 points Butler contests are not genuinely in dispute. Therefore, Butler was duly assessed at least 10.5 points under the Attendance Policy.

The first three of the Thirteen Points were memorialized in a written "Progress Check" signed by Butler on June 26, 2008. (Docket #70-42, 4). Under a "Comments" column in the "Performance Evaluation/Expectation" section of the form, Butler's supervisor wrote "needs to improve attendance." *Id.*

The first nine of the Thirteen Points were assessed by January 2, 2009. (GBDB-Facts ¶¶ 54, 58, 60, 63, 67, 69, 72, 74, 76). Those nine points were detailed in a memo addressed to Butler dated January 13, 2009. (Docket #70-34). That memo provided that it constituted "warning for unsatisfactory attendance" and that "[f]ailure to improve your attendance will result in further disciplinary action up to and including termination. *The 10th point will result in immediate termination, within a 12-month period.*" (*Id.*). In addition, the memo bears a handwritten notation that "Employee refused to sign." *Id.* Asked to explain his refusal to sign the memo, Butler stated in deposition: "I should have been given a verbal when I missed my first six days, but they let it extended [sic] out to nine days, and then I didn't receive no counseling or nothing, as it states in the attendance policy. So I felt that, you know, that's why I refused to sign this." (Docket #70-2, 27).

On February 19, 2009, following three consecutive days of absences on February 16-18, 2009 – absences for which Butler accrued his eleventh through thirteenth points by Defendants' count – Butler was terminated. (Docket #70-41). A written termination report dated February 19, 2009, remarks that Butler was terminated for having "accumulated 10 points." (*Id.*).

3.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

4.   ANALYSIS

   4.1   Butler's Unsuccessful Applications for Employment

Looking back to his five unsuccessful employment applications to AFG between September 6, 2007, and February 1, 2008 (collectively, the "Five Applications"), Butler claims that the fact that he was eventually hired by GBDB on March 17, 2008, "give[s] rise to an inference of unlawful discrimination based upon [his] race." (Docket #27, 3). The Defendants argue that they are entitled to summary judgment on Butler's Title VII race

discrimination claim because, *inter alia*, Butler failed to timely file a charge of discrimination with the EEOC as Title VII requires.

To proceed under Title VII, a plaintiff must charge a violation, at the latest, "within three hundred days after the alleged unlawful employment practice occurred[.]" *See* 42 U.S.C. § 2000e-5(e)(1). Put plainly, "[f]ailure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005).

> For purposes of this statute of limitations, discrete discriminatory employment actions such as…refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts. Thus, each discrete discriminatory act "starts a new clock for filing charges alleging that act," and charges not filed within 300 days of the act in question are not actionable.

*Id.* (citations omitted).

Here, the last denial Butler received regarding the Five Applications was memorialized in a letter from AFG to Butler dated February 1, 2008. (AFG-Facts ¶ 12); (Docket #56-7). Therefore, at most, Butler had 300 days from February 1, 2008, to file a charge with the EEOC claiming discriminatory refusal to hire. Unfortunately for Butler, the charge he filed with the EEOC claiming discriminatory refusal to hire is dated April 28, 2009 – well past the 300-day limit. (Docket #56-46).

As the Seventh Circuit has recently explained, requiring a timely administrative complaint serves two purposes: it promotes prompt resolution and provides timely notice to the employer. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). However, equitable tolling of the filing deadline may be available in three circumstances. First, equitable tolling may apply when a plaintiff cannot obtain information necessary to realize he has a claim, even

through the exercise of due diligence. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). The second circumstance justifying equitable tolling is a good faith error by the plaintiff. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). And finally, equitable tolling may extend a filing deadline when the plaintiff is prevented from filing within the statutory period. *Id.* "On a motion for summary judgment, the burden is on the plaintiff to present facts which, if true, would justify equitable tolling of the statute of limitations." *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir. 1990). Here, Butler does not point the Court to any evidence in the record to justify equitable tolling. Moreover, the Court finds no evidence in the record to support equitable tolling.[7]

Therefore, the Court finds that Butler's discriminatory refusal-to-hire claim under Title VII is time-barred and so the Court is obliged to and will grant Defendants' motions for summary judgment as to that claim.

    4.2    Butler's Termination

        4.2.1    Retaliation Claim Under Title VII

Butler's amended complaint *alleges* that he was terminated in retaliation for complaining about: (i) his employer's administration of its attendance policy; (ii) "the coloration of the meat"; and (iii) that "one leadperson stated that [the meat] looked like [Butler]." (Docket #27, 4). The Defendants argue, *inter alia*, that Butler has failed to carry his burden under either the direct or indirect methods of proving a case of Title VII retaliation.

---

[7] Notably, Butler filed his EEOC charge regarding the Five Applications *over two months after* he was terminated by GBDB.

"In relevant part, Title VII renders unlawful the discrimination against any employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3a." *Gates v. Catepillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). "An employee bringing a retaliation claim must present direct evidence of discrimination or indirect evidence under the burden-shifting analysis prescribed by *McDonnell Douglas. Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001)." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005).

4.2.1.1   Direct Method of Proof

"To establish retaliation under the direct method of proof, a plaintiff must offer *evidence* that [1] he engaged in a statutorily protected activity, [2] that the defendants subjected him to an adverse employment action and [3] that a causal connection exists between the two events." *Treadwell v. Office of Ill. Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006) (emphasis added). "To demonstrate the 'causal link,' the employee must demonstrate that the employer would not have taken the adverse action but for the employee's protected activity." *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999).

> Evidence of retaliation is "direct" when, if believed, it would prove the fact in question without reliance on inference or presumption. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). This "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus," *id.*, and because such evidence is rare we also allow the introduction of circumstantial evidence from which the fact-finder could infer intentional discrimination, *id.*; *Hottenroth*, 388 F.3 at 1028."

*Id.*

Here, Butler fails on the first and third elements. As to the first element – engaging in a statutorily-protected activity – Butler only *alleges* that he complained about: (i) his employer's administration of its attendance policy; (ii) "the coloration of the meat"; and (iii) that "one leadperson stated that [the meat] looked like [Butler]." (Docket #27, 4). He offers no evidence to show these complaints were in fact lodged, let alone argue that the complaints constitute statutorily-protected activity. Although well-pled allegations may withstand a motion to dismiss, the Court requires evidence to substantiate those allegations when considering a motion for summary judgment. Therefore, Butler fails on the first element.

Even if the Court were to assume that the alleged complaints were in fact lodged and constitute protected activities, Butler fails to point to any evidence in the record from which a trier of fact could infer that his employer would not have fired him but for those complaints (the third element). Rather, like the plaintiff in *Gates*, "there is nothing [he] can point to that reasonably suggests that [his employer's] actions were motivated by anything other than business judgment." *Gates*, 513 F.3d at 686.

Given that: (i) Butler acknowledged receiving the Attendance Policy; (ii) the Attendance Policy provides that an employee who accumulates ten points under it will be terminated; (iii) points are accrued under the Attendance Policy for failing to give advanced notice of an absence not pre-approved (call-in) and/or failing to report on a scheduled workday (show) – bases that, on their face, appear to be objective, non-retaliatory and non-discriminatory as well as rationally-designed to efficiently protect legitimate business interests; (iv) as detailed at-length in Section 2.2, *supra*, Butler was

duly assessed at least 10.5 points under the Attendance Policy; and (v) Butler points to no evidence in the record to suggest a causal link between his alleged complaints and his termination, the Court is obliged to find that Butler has not demonstrated the third element; rather the decision to terminate Butler appears to be motivated by business judgment.

### 4.2.1.2 Indirect Method of Proof

"[T]he adaptation of *McDonnell Douglas* to the retaliation context, requires the plaintiff to show that [1] after filing a charge [2] only he, and not any similarly situated employee who did not file a charge, [3] was subjected to an adverse employment action even though [4] he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Treadwell*, 455 F.3d 778, 781 (7th Cir. 2006).

Here, Butler fails elements (1) and (4) for the reasons stated *supra* in Section 4.2.1.1.

### 4.2.1.3 Conclusion

For the reasons set forth above, the Court is obliged to and will grant Defendants' motions for summary judgment on Butler's Title VII retaliation claim.

### 4.2.2 Disability Discrimination Claim Under the ADA

Lastly, Butler claims that he was disabled on account of a back injury (Docket #70-2, 39) and that he was terminated because of that disability in violation of the ADA (Docket #27, 5). The Defendants argue, *inter alia*, that Butler has failed to carry his burden under either the direct or indirect methods of proving disability discrimination under the ADA.

Because, as explained below, Butler does not carry his burden as to showing discrimination, the Court need not address whether Butler's back injury constitutes a disability under the ADA.

"A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof." *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601.

#### 4.2.2.1 Direct Method of Proof

Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. Direct evidence requires an admission by the decision maker that his or her actions were based upon animus. However, employers are usually careful not to offer overt remarks revealing discrimination, and circumstantial evidence that allows a jury to infer intentional discrimination is also permissible. *Dickerson*, 657 F.3d at 601 (citations omitted).

Here, Butler does not point to any direct evidence to show unlawful termination based on a disability, but rather he argues generally that Defendants "fail" the Attendance Policy. To the extent that Butler intends this generalization to mean that he was terminated with less than 10 duly-accessed points under the Attendance Policy, his argument is unavailing for the reasons set forth above in Section 2.3. Moreover, Butler loses sight of the fact that the Attendance Policy is, on its own terms, a set of *guidelines* that "are not intended as limitations upon the Company's judgment to expend, alter or otherwise modify them as determined by the facts of each individual situation." (Docket #70-12). He provides the Court no evidence to indicate that these *guidelines* were applied differently as to him than as to others. Therefore, the Court will turn its analysis to the indirect method of proof.

#### 4.2.2.2 Indirect Method of Proof

Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably.

*Dickerson*, 657 F.3d at 601 (citations omitted).

Not only does Butler submit no evidence as to the fourth element, he fails the second element for the reasons stated *supra* in Section 4.2.1.1.

#### 4.2.2.3 Conclusion

For the reasons set forth above, the Court is obliged to and will grant Defendants' motions for summary judgment on Butler's claim under the ADA that he was unlawfully terminated because of a disability.

### 5. CONCLUSION

For the foregoing reasons, the motions for summary judgment by AFG (Docket #55) and GBDB (Docket #68) will be granted.

Accordingly,

IT IS ORDERED that defendant American Foods Group LLC's "Motion for Summary Judgment" (Docket #55) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that defendant Green Bay Dressed Beef LLC's "Motion for Summary Judgment" (Docket #68) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits, with prejudice, together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge